United States District Court
Southern District of Texas
**ENTERED**
September 28, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSE LUIS SANCHEZ, | § | |
| TDCJ # 02077236, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:20-2210 |
| | § | |
| BOBBY LUMPKIN, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OPINION AND ORDER

State inmate Jose Luis Sanchez, who proceeds *pro se*, is incarcerated in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"). Sanchez filed a petition for a federal writ of habeas corpus seeking relief from a state conviction (Dkt. 1). Respondent Bobby Lumpkin filed a motion for summary judgment (Dkt. 9) seeking dismissal of all claims, along with a copy of the state court records (Dkt. 10). Sanchez filed a response (Dkt. 20) and the claims are ripe for decision. Having now considered the petition, briefing, all matters of record, and the applicable legal authorities, the Court determines that summary judgment should be **granted** for Respondent and Sanchez's habeas claims should be **denied** for the reasons that follow.

## I.    BACKGROUND

### A.    Procedural Background

In 2016, a jury convicted Sanchez continuous sexual abuse of a child in Case No.

146836, 262d District Court of Harris County, Hon. Denise Bradley presiding.  The court sentenced Sanchez to 30 years in TDCJ.  *See* Dkt. 10-14, at 55-56;[1] Dkt. 10-22.

On November 16, 2017, the First Court of Appeals affirmed the judgment against Sanchez.  *See Sanchez v. State*, No. 01-16-00525-CR, 2017 WL 5495103 (Tex. App.– Hou. [1st Dist.] 2017, pet. ref'd); Dkt. 10-3; Dkt. 10-4.  On March 28, 2018, the Texas Court of Criminal Appeals refused his petition for discretionary review (PD-1326-17) (Dkt. 10-13).  Sanchez did not file a petition for a writ of *certiorari* to the United States Supreme Court.

Sanchez then filed for state habeas relief (WR-90,686-01).   The trial court entered findings of fact and conclusions of law recommending denial of relief (Dkt. 10-25, at 134-44).  On June 17, 2020, the Texas Court of Criminal Appeals denied the application without written order on the trial court's findings and on the court's independent review of the record (Dkt. 10-24).

On June 21, 2020, Sanchez executed a petition for a writ of habeas corpus in these federal proceedings.

### B.   Factual Background

Sanchez, a former teacher, was convicted in 2016 of continuous sexual abuse of a child for at least two acts of sexual abuse against a child younger than 14 years of age, including acts against one complainant on or about November 1, 2013, and against

---

[1]    Throughout this memorandum opinion, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case-filing ("ECF") system.

another on or about October 1, 2014.  *See* Dkt. 10-14, at 14 (indictment); *id.* at 46-53 (jury instructions); Dkt. 10-21, at 41-42 (verdict). The appellate court summarized the facts of Sanchez's case:

> Sanchez started his teaching career in Mexico as an elementary school teacher with a specialty in mathematics. He and his wife moved to the United States in 2002. In 2007, after he acquired certification to teach in Texas, he was hired at an elementary school in Alvin Independent School District, where he remained until 2011. Following stints at Bryan I.S.D. and Channelview I.S.D., Aldine I.S.D. hired Sanchez to teach second-grade bilingual classes for the 2013–2014 academic year. The Aldine I.S.D. retained him the following school year to teach first grade.
>
> During spring break in March 2015, a second-grader, who had been in Sanchez's first-grade class the previous year, told her mother that on multiple occasions Sanchez had touched her genitals, touched her breasts, tried to kiss her, and grabbed her hand to place on his genitals. The child's mother told her husband, who contacted police. The next day, the family met with Officer S. Terrell of the Aldine I.S.D. Police Department.
>
> After Terrell interviewed the family, he and Lieutenant K. Northey began an investigation. Sanchez agreed to speak with Terrell and Northey. In the interview, Sanchez denied the girl's allegations of inappropriate conduct. Sanchez admitted he received a complaint of inappropriately hugging a female student while he was teaching at Alvin I.S.D. several years earlier, but stated that the district did not fire him or take any disciplinary action against him.
>
> During the investigation, three more female students came forward and accused Sanchez of mistreating them in ways similar to those reported by the initial student. The four students were interviewed at the Children's Assessment Center, where they provided further details concerning Sanchez's assaults. Based on the results of the investigation, Sanchez was arrested and charged with indecency with a child.
>
> At trial, Sanchez testified in his own defense. On direct examination, Sanchez described his reasons for leaving Alvin I.S.D. in 2011 as stemming from "a situation with the administrators" and explained that the administrators were trying to get rid of experienced teachers like him because they earned higher pay. He also had "personal problems" with the principal and assistant principal at Alvin I.S.D., which he attributed to a

lack of professionalism on their part. Although he admitted to having been accused of hugging a student, he testified that "[t]he school and the district personnel carried out the investigation, and nothing happened because nothing had taken place. It had all been something false." The direct examination continued:

> Q. Were you suspended for that?
> A. No.
> Q. Were you fired for that?
> A. No.
> Q. Did law enforcement come and talk to you about that?
> A. No.
> Q. Did CPS come and talk to you about that?
> A. No.
> Q. So aside from that, you have had a, essentially, a pretty good career as a teacher up until today?
> A. That's right.

The State cross-examined Sanchez with the 2011 directive Sanchez received from Alvin I.S.D. Sanchez acknowledged having received the directive and that his handwriting appears on the document, but he denied the allegations made in the directive and testified that he refused to sign it for that reason. Although the directive was not admitted into evidence and is not otherwise in the appellate record, the testimony about it demonstrates that it documents interviews with approximately half of the students in Sanchez's homeroom class as well as with several staff members in which the interviewees described Sanchez's inappropriate conduct with female students. It directed Sanchez to (1) stop massaging the shoulders and stroking the hair of a particular female student; (2) stop having students eat lunch in his classroom; (3) stop showing favoritism to the female students in his classroom; and (4) stop using the term "mis novias" (my girlfriends) to refer to certain female students. It also prohibited Sanchez from inviting students to places outside of the school without parental involvement and consent. Sanchez resigned from Alvin I.S.D. approximately one month after receiving the directive.

The defense also called Dr. Jerome Brown, a forensic psychologist, who testified on Sanchez's behalf. Brown mentioned that Sanchez had a "stellar career as a primary and secondary teacher," but when asked, he admitted that he had not seen the Alvin I.S.D. written directive. After this admission, the State cross-examined Brown on the directive's contents. Defense counsel objected to the State's questions based on relevance and as having been asked and answered. The trial court overruled the objections.

*Sanchez*, 2017 WL 5495103, at *1-2.

Sanchez recounts that he met with deputies and gave a written statement; that he denied the girls' allegations; that he was not fired from Alvin ISD but was classified as "re-hireable"; and that the defense called several witnesses who testified they had never seen Sanchez act inappropriately (Dkt. 20, at 2-3). He submits several exhibits, including the indictment against him and documents prepared by the prosecution detailing the girls' allegations against him (*id*. at 16-27).

On state habeas review, Sanchez claimed that his trial counsel was constitutionally ineffective on four grounds: (a) because counsel failed to strike or challenge for cause members of the venire who were biased against Sanchez; (b) because counsel failed to file a motion to quash the indictment on the grounds that did not include a culpable mental state; (c) because counsel failed to object to the statements from three outcry witnesses that did not comply with Texas Code of Criminal Procedure article 38.072; and (d) because counsel failed to object to evidence of Sanchez's extraneous offenses and bad acts that did not meet requirements for admission under Texas Code of Criminal Procedure article 38.37 (Dkt. 10-25, at 5-23). The trial court entered findings of fact and conclusions of law recommending denial of habeas relief, based on its determination that Sanchez had failed to show that his trial counsel's representation "fell below an objective standard of reasonableness" or that he was prejudiced (Dkt. 10-25, at 140, at ¶ 1). The Texas Court of Criminal Appeals denied habeas relief.

In these federal proceedings, Sanchez brings the same four claims of ineffective

assistance of trial counsel.  He seeks a new trial, among other relief.  Respondent moves

for summary judgment and dismissal of all of Sanchez's habeas claims.

## II.   LEGAL STANDARDS

### A.   *Pro Se* Pleadings

Federal courts do not hold *pro se* habeas petitions "to the same stringent and

rigorous standards as . . . pleadings filed by lawyers." *Hernandez v. Thaler*, 630 F.3d

420, 426 (5th Cir. 2011) (cleaned up).  "The filings of a federal habeas petitioner who is

proceeding *pro se* are entitled to the benefit of liberal construction."  *Id.*

### B.   The Anti-Terrorism and Effective Death Penalty Act

This federal petition for habeas corpus relief is governed by the applicable

provisions of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA").  *See*

*Woodford v. Garceau*, 538 U.S. 202, 205-08 (2003); *Lindh v. Murphy*, 521 U.S. 320,

335-36 (1997).   Under AEDPA, federal habeas relief based upon claims that were

adjudicated on the merits by the state courts cannot be granted unless the state court's

decision (1) "was contrary to, or involved an unreasonable application of, clearly

established federal law, as determined by the Supreme Court of the United States" or (2)

"was based on an unreasonable determination of the facts in light of the evidence

presented in the State court proceeding."  28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S.

3, 7-8 (2002); *Cobb v. Thaler*, 682 F.3d 364, 372-73 (5th Cir. 2012).

Federal courts look to the "last reasoned opinion" as the state court's "decision."

*Salts v. Epps*, 676 F.3d 468, 479 (5th Cir. 2012); *see Wilson v. Sellers*, 138 S. Ct. 1188,

1192 (2018).  "Where a state court's decision is unaccompanied by an explanation," and

the lower courts did not issue a reasoned opinion, "the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 526 U.S. 86, 98 (2011); *see Johnson v. Williams*, 568 U.S. 289, 293 (2013) (holding that there is a rebuttable presumption that the federal claim was adjudicated on the merits when the state court addresses some claims, but not others, in its opinion).

Review under AEDPA is "highly deferential" to the state court's decision. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). To merit relief under AEDPA, a petitioner may not merely show legal error in the state court's "decision." *White v. Woodall*, 572 U.S. 415, 419 (2014) (stating being "merely wrong" or in "clear error" will not suffice federal relief under AEDPA). AEDPA review exists only to "guard against extreme malfunctions in the state criminal justice systems." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (cleaned up). "[F]ocus[ing] on what a state court knew and did," *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011), AEDPA requires inmates to "'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woodall*, 572 U.S. at 419-20 (quoting *Richter*, 562 U.S. at 103). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

For questions of law or mixed questions of law and fact adjudicated on the merits in state court, this Court may grant habeas relief under 28 U.S.C. § 2254(d)(1) only if the state court decision "was contrary to, or involved an unreasonable application of, clearly

established" Supreme Court precedent.  *See Kittelson v. Dretke*, 426 F.3d 306, 318 (5th Cir. 2005).  Under the "contrary to" clause, this Court may afford habeas relief if the state court "reaches a legal conclusion in direct conflict with a prior decision of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts." *Matamoros v. Stephens*, 783 F.3d 212, 215 (5th Cir. 2015) (cleaned up).  To constitute an "unreasonable application" of clearly established federal law, the state court's determination "must be objectively unreasonable, not merely wrong; even clear error will not suffice." *Woods*, 575 U.S. at 316 (cleaned up).

On factual issues, AEDPA precludes federal habeas relief unless the state court's adjudication of the merits was based on an "unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *See* 28 U.S.C. § 2254(d)(2).

### C.   Summary Judgment Standard

In ordinary civil cases, a district court considering a motion for summary judgment is required to construe the facts of the case in the light most favorable to the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). "As a general principle, Rule 56 of the Federal Rules of Civil Procedure, relating to summary judgment, applies with equal force in the context of habeas corpus cases." *Clark v. Johnson*, 202 F.3d 760, 764 (5th Cir. 2000). However, AEDPA modifies summary-judgment principles in the habeas context, and Rule 56 "applies only to the extent that it does not conflict with the habeas rules." *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004); *see*

*Torres v. Thaler*, 395 F. App'x 101, 106 n.17 (5th Cir. 2010). "Therefore, § 2254(e)(1)— which mandates that findings of fact made by a state court are presumed to be correct— overrides the ordinary summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmoving party." *Smith*, 311 F.3d at 668.

## III.   ANALYSIS

Sanchez's federal petition brings a claim that his trial counsel was constitutionally ineffective because counsel failed to (a) strike or challenge for cause venirepersons who were biased against him; (b) file a motion to quash the indictment, which did not include a culpable mental state; (c) object to hearsay testimony from three outcry witnesses; and (d) object to evidence of extraneous offenses and bad acts (Dkt. 1, at 7, 9).  Sanchez exhausted these four claims in state habeas proceedings as required by 28 U.S.C. § 2254(b).

Under *Strickland v. Washington*, 466 U.S. 668 (1984), a criminal defendant claiming ineffective assistance of counsel must show that defense counsel rendered deficient performance and that performance prejudiced the defendant:

> To demonstrate deficient performance, the defendant must show that, in light of the circumstances as they appeared at the time of the conduct, "counsel's representation fell below an objective standard of reasonableness" as measured by "prevailing professional norms."  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." . . . .

> To demonstrate prejudice under *Strickland*, [the defendant] must show that counsel's deficient performance was "so serious as to deprive him of a fair trial, a trial whose result is reliable." This requires the showing of a reasonable probability that but for counsel's deficiencies, the result of the proceeding would have been different.

*Rhoades v. Davis*, 852 F.3d 422, 431-32 (5th Cir. 2017) (quoting *Strickland*, 466 U.S. at 687-89, 694). *Strickland* defines a "reasonable probability" as "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This requires a "substantial, not just conceivable, likelihood of a different result." *Pinholster*, 563 U.S. at 189 (cleaned up). The petitioner's burden to show a "reasonable probability" of changed outcome is less than a preponderance:

> The question is not whether the defendant would more likely than not have received a different verdict . . . but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence.

*Kyles v. Whitley*, 514 U.S. 419, 434 (1995); *see United States v. Dominguez Benitez*, 542 U.S. 74, 83 n. 9 (2004). The prejudice inquiry is focused on the "fairness of the trial and the reliability of the . . . verdict in light of any errors made by counsel, and not solely the outcome of the case." *White v. Thaler*, 610 F.3d 890, 912 (5th Cir. 2010) (cleaned up).

Review of counsel's performance is deferential, and counsel enjoy a strong presumption that their conduct is within the "wide range" of the bounds of professional norms. *Strickland*, 466 U.S. at 689. A petitioner's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687. Any "strategic decisions" made by trial counsel "must be given a strong degree of deference." *Rhoades*, 852 F.3d at 432. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690; *see Rhoades*, 852 F.3d at 434.

On habeas review, when a state court has adjudicated a claim of ineffective assistance of counsel on the merits, the petitioner bears an especially heavy burden.  The question is not whether the state court's application of *Strickland* was incorrect, but rather whether it was unreasonable.

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Richter*, 562 U.S. at 105 (cleaned up).  *See Trottie v. Stephens*, 720 F.3d 231, 240-41 (5th Cir. 2013) ("'even a strong case for relief does not mean the state court's contrary conclusion was unreasonable'" (quoting *Richter,* 562 U.S. at 102)).

In this case, the state habeas court determined that Sanchez's *Strickland* claims lacked merit because Sanchez had not demonstrated that his counsel's "conduct fell below an objective standard of reasonableness" or that, "but for trial counsel's alleged deficient conduct, there is a reasonable probability that the result of the proceeding would have been different" (Dkt. 10-25, at 140, ¶ 1).  *See id*. at 141, ¶ 4 ("The totality of the representation afforded the applicant was sufficient to protect his right to reasonably effective assistance of counsel in the primary case").[2]  The Court now addresses each of

---

[2]    Sanchez argues several times in his briefing that the state habeas court's determination is not entitled to deference or a presumption of correctness because his trial counsel did not provide an affidavit or otherwise answer Sanchez's state habeas claims.  *See, e.g.*, Dkt. 20, at 5 (arguing that the habeas court's determination was not entitled to deference under AEDPA because the court could not determine, in the absence of an affidavit from counsel, whether counsel acted

Sanchez's four claims in turn.

### A.     Juror Challenges or Strikes

Sanchez's first ground for relief alleges that his trial counsel was constitutionally ineffective when he failed to strike or challenge venirepersons who were biased against him.  He focuses on a question the prosecutor posed to prospective jurors during voir dire that pertained to a statement made by a child.  As recounted by the state habeas court, the prosecutor asked the panel to consider the following statement:  "If a child says they were sexually abused, they probably were" (Dkt. 10-25, at 136, ¶ 7; *see* Dkt. 10-16, at 75 (transcript of voir dire proceedings)).  The prosecutor asked each venireperson to indicate their level of agreement with the statement.  All venire members who would become jurors responded that they agreed, with the exception of Juror # 40, who indicated strong agreement; no veniremember indicated disagreement or strong disagreement (Dkt. 10-25, at 136-37, ¶¶ 9-10; Dkt. 10-16, at 75-81).

The state habeas court concluded that Sanchez had failed to show that that his counsel's performance was deficient or that Sanchez was prejudiced (Dkt. 10-25, at 140, ¶ 1).  The court determined that, even if trial counsel had challenged the jurors for cause, the trial court would not have erred if it had denied challenges based on the jurors'

---

based on strategy).   However, the state habeas court entered detailed findings and conclusions upon which the Texas Court of Criminal Appeals denied relief, adjudicating Sanchez's habeas claims on the merits.   Therefore, this Court must apply the deferential standards in § 2254(d). *See* 28 U.S.C. § 2254(d) (stating that standard of review applies to "any claim that was adjudicated on the merits in State court proceedings").  The absence of a response from trial counsel to Sanchez's ineffective-assistance-of-counsel claim does not alter the standard of review under AEDPA.   *See Valdez v. Cockrell*, 274 F.3d 941, 950 (5th Cir. 2001) (holding that AEDPA's mandatory language stating that § 2254(d)'s standards apply to all cases "adjudicated on the merits" does not speak to the quality of the process and "leave no room for judicial imposition of a full and fair hearing prerequisite").

responses, noting that questions intended to discover bias or prejudice are proper under Texas law (*id.* at 140-41, ¶¶ 2-3 (citing, *inter alia*, *Sanchez v. State*, 165 S.W.3d 707, 712 (Tex. Crim. App. 2005)). *See* TEX. CODE CRIM. PROC. art. 35.16(a)(9) (a challenge for cause may be made on the grounds that "the juror has a bias or prejudice in favor of or against the defendant"). As noted in *Sanchez*, "bias against the law is refusal to consider or apply the relevant law" and "exists when a venireperson's beliefs or opinions would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and oath." *Sanchez*, 165 S.W.3d at 711 n.4 (cleaned up).

In these federal habeas proceedings, Sanchez argues that his counsel was deficient, pointing out that Respondent has presented no reason why trial counsel failed to strike the specific jurors he identified and that the venirepersons responding to the query had not yet heard any evidence in his case (Dkt. 20, at 6-7; Dkt. 1, at 8). He refers to his memorandum from state habeas proceedings, in which he argued that his counsel had failed to probe the potential jurors to determine whether they were able to set aside their bias, and that no reasonable strategy supported counsel's failure to do so (Dkt. 10-25, at 29-30). He also argues that he has shown prejudice because, if trial counsel had exercised strikes on all venirepersons who indicated agreement with the prosecutor's statement, "there is a reasonable probability that trial could have ended in an acquittal or hung jury" (Dkt. 20, at 7).

However, AEDPA requires Sanchez to demonstrate not only a constitutional violation under *Strickland*, but also that the state habeas court's denial of his claim was an unreasonable application of *Strickland* or an unreasonable determination of the facts in

light of the evidence presented. *See Richter*, 562 U.S. at 105 (noting the double deference due when *Strickland* and § 2254(d) "apply in tandem," and cautioning that "[f]ederal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d)"). Here, the state habeas court addressed Sanchez's claim and determined that counsel's decision not to challenge the potential jurors for cause was supported by Texas law and did not amount to deficient performance (Dkt. 10-25, at 140-41, ¶¶ 1-4). This Court must defer to the state habeas court's determination. Given the law cited by the state habeas court and the strong presumption that counsel's actions were based on sound trial strategy, *see Strickland*, 466 U.S. at 689, Sanchez has not shown that the state court applied *Strickland* unreasonably or made an unreasonable determination of the facts when it denied his claim. Therefore, § 2254(d) does not permit federal habeas relief.

### B.    Motion to Quash Indictment

Sanchez claims in his second ground for relief that his trial counsel was ineffective because he failed to file a motion to quash the indictment against Sanchez. He maintains that the indictment for continuous sexual abuse of a child was defective because the indictment did not refer to a culpable mental state. *See* Dkt. 1, at 7 (the "indictment fail[ed] to mention anything about intentionally and knowingly").

The state habeas court's findings and conclusions acknowledged that the indictment did not include *mens rea*, but noted that the jury charge "included specific application paragraphs as to each complainant that required the jury to find the *mens rea* of 'intentionally or knowingly'" (Dkt. 10-25, at 137, ¶ 11 (citing trial record)). It

determined that Sanchez was not harmed because, under Texas law, a defendant "does not suffer harm []unless he did not, in fact, receive notice of the State's theory against which he would have to defend" (*id*. at 141, ¶ 6 (citing *Smith v. State*, 291 S.W.3d 260, 267 (Tex. Crim. App. 2009)).

Sanchez argues that his counsel had allowed him to be prosecuted on a defective indictment, and that no reasonable strategy could support counsel's failure to make the motion (Dkt. 20, at 8-9). However, even assuming Sanchez could demonstrate that counsel was deficient for failing to make the motion, *Strickland* also requires him to show that he was prejudiced by counsel's performance. The state habeas court specifically concluded that, because the jury was charged with finding that Sanchez acted intentionally or knowingly in order to convict him, Sanchez was not prejudiced (Dkt. 10-25, at 137, ¶ 11; *id*. at 141, ¶¶ 5-6).[3] Sanchez does not demonstrate that this denial of relief was an unreasonable application of *Strickland* or an unreasonable determination of the facts in light of the evidence presented. *See Richter*, 562 U.S. at 105. Habeas relief therefore must be denied.

## C.    Outcry Witnesses

Sanchez's third ground alleges that his trial counsel was ineffective because he failed to object to hearsay testimony from three "outcry" witnesses who testified about the girls' allegations against him. Texas law permits the admission of testimony

---

[3]    Additionally, Respondent argues that Sanchez was not prejudiced because, even if counsel had filed a motion to quash and the trial court had granted relief, the prosecution could simply have re-indicted Sanchez (Dkt. 9, at 16).

regarding certain outcry statements, as an exception to the hearsay rule, in prosecutions for sexual offenses against a young child. *See* TEX. CODE CRIM. PROC. art. 38.072. The testimony must describe a statement made by the child to the first adult other than the defendant to whom the child spoke about the offense. *Id*. art. 38.072(2)(a). At Sanchez's trial, Lorena Del Villar, Irma Villa, and Griselda Flores were each designated as an outcry witness to testify about a child's statements regarding Sanchez's acts. Sanchez claims that the prosecution did not give him notice 14 days in advance of the testimony, as the statute requires. *See id*. art. 38.072(2)(b).[4]

As a preliminary matter, Sanchez protests that documents relevant to this claim were missing from the appellate record and, on that basis, suggests that the prosecution may have fabricated the documents during state habeas proceedings.[5] The state habeas court acknowledged that some motions filed by the prosecution were "in the clerk's file but not included in the clerk's record of the appellate record," and thus that the appellate record "did not include a complete copy of the motions that were filed by the parties in the clerk's file possessed by the Harris County District Clerk's office" (Dkt. 10-25, at 135, ¶ 3). However, it then relied on documents from the Clerk's file to make its findings regarding the timing of the prosecutor's notice (*id*. at 137-38, ¶¶ 12, 14). Sanchez's speculations regarding the missing documents, although offering a view different from

---

[4]     Sanchez submits a copy of the prosecution's notice of its intent to use the victim's hearsay statement, which details the girls' allegations of Sanchez's sexual touching and other abusive acts (Dkt. 20, at 18-21).

[5]     *See* Dkt. 20, at 10-11 (pointing out that the documents are illegible, appear to be altered with a handwritten date, that he did not receive an evidentiary hearing in state habeas proceedings, and that the state habeas court adopted proposed findings and conclusions submitted by the prosecutor).

that of the state habeas court, are insufficient to demonstrate that the court's determination regarding their reliability was unreasonable in light of the facts presented under § 2254(d)(2).

The state habeas court found, based on documents in the clerk's file, that the prosecution had timely notified Sanchez that it intended to use outcry testimony from Del Villar and Villa. *See id.* at 137, ¶12 ("The Court finds, based upon a review of the clerk's file[,] as opposed to the clerk's record, that the State provided timely notice that it intended to utilize Lorena Del Villar and Irma Villa as outcry witnesses in applicant's trial"). It further determined that the prosecution had failed to provide timely notice regarding Flores, who testified about outcry statements by her daughter "N.C." about what Sanchez had done (*id.* at 137-38, ¶ 16). Sanchez's counsel did not object to the outcry testimony by Flores, although he objected on other grounds to admission of the extraneous offense against Flores' daughter (*id.* at 138, ¶ 18). However, after Flores testified, the prosecution called her daughter, N.C., who testified as to "how [Sanchez] toucher her and another student" (*id.* at 139, ¶ 19). On cross-examination, as recounted by the state habeas court, Sanchez's counsel "was able to have [N.C.] admit that she first told people nothing happened and that she advised a Children's Assessment Center interviewer that the touching only occurred one time, a fact inconsistent with her trial testimony" (*id.* at 139, ¶ 20). Based on these facts, the habeas court concluded that Sanchez had not been harmed by Flores' testimony and that, "[i]n all things, [Sanchez] failed to demonstrate that his conviction was improperly obtained" (*id.* at 142, ¶¶ 8-9).

Sanchez argues that he has shown prejudice under *Strickland* because the lack of

timely notice regarding Flores prevented his counsel from adequately preparing a defense before trial (Dkt. 20, at 11-12) (arguing that Flores' outcry testimony "was used by the state to bolster the complainant's story before the jury which made it seem more credible").    However, the Fifth Circuit requires that, in order to establish prejudice for failure to investigate or prepare a defense, "a petitioner must allege with specificity what the investigation would have revealed and how it would have changed the outcome of the trial."  *Miller v. Dretke*, 420 F.3d 356, 361 (5th Cir. 2005); *see Adekeye v. Davis*, 938 F.3d 678, 684 (5th Cir. 2019); *Devoe v. Davis*, 717 F. App'x 419, 428 (5th Cir. 2018).  In the absence of such a showing, the claim is conclusory and subject to dismissal.  *Day v. Quarterman*, 566 F.3d 527, 540 (5th Cir. 2009).  Sanchez's suggestion that his counsel might have uncovered useful information regarding Flores and her testimony contains no specific facts regarding what counsel would have found with more time to prepare, or about how those facts could have aided his defense.    These vague or speculative suggestions are inadequate to show prejudice from the lack of notice regarding Flores' testimony.  *See Adekeye*, 938 F.3d at 684; *Devoe*, 717 F. App'x at 428.  Sanchez therefore does not show that the state habeas court unreasonably applied *Strickland*, or made an unreasonable determination of the facts in light of the evidence presented, when it concluded that his counsel was not constitutionally ineffective.    *See* 28 U.S.C. § 2254(d).

### D.    Extraneous Offenses and Bad Acts

In his fourth ground, Sanchez alleges that his counsel was ineffective because he failed to object to evidence of extraneous offense or bad acts for which the prosecution

did not comply with the 30-day notice requirement in Texas Code of Criminal Procedure art. 38.37 § 3. He alleges that his counsel should have objected to prevent the jury from hearing the damaging evidence (Dkt. 1, at 9-10).

The state habeas court found that the clerk's file reflected proper notice by the prosecution:

> The Court finds, based on the clerk's file[,] as opposed to the clerk's record, that on January 27, 2016, the State filed a "State's Notice of Intention to Use Extraneous Offenses and Prior Convictions" that provided notice of its intent to introduce the applicant's extraneous and/or bad acts towards N.C. and/or A.C. under Tex. Code Crim. Proc. art. 38.37.

(Dkt. 10-25, at 139, ¶ 21; *see id.* at 138, ¶ 15). Additionally, the trial record reflects that, at trial in June 2016, Sanchez's counsel acknowledged receiving timely notice of these extraneous offenses. *See* Dkt. 10-19, at 11 (THE COURT" And did you receive notice 30 days before trial? [DEFENSE COUNSEL]: Yes, Your Honor."); *see* Dkt. 10-25, at 114-19 (notice of intent served on defense counsel on Jan. 25, 2016).

The record reflects that Sanchez's counsel received the required notice, and therefore had no grounds for the objection Sanchez now urges. If trial counsel had made the objection, the trial court would have had grounds to overrule it. Because Sanchez does not identify a meritorious basis for the objection, he fails to show a reasonable probability of a changed outcome if the objection had been made. See *Rhoades*, 852 F.3d at 432; *Sones v. Hartgett*, 61 F.3d 410, 415 n. 5 (5th Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point"); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections"). Sanchez therefore fails to show either deficient performance or prejudice

under *Strickland*.  The state habeas court's denial of his claim was not an unreasonable application of *Strickland* or an unreasonable determination of the facts in light of the evidence presented.  *See* 28 U.S.C. § 2254(d).

## IV.    CERTIFICATE OF APPEALABILITY

Habeas corpus actions under 28 U.S.C. § 2254 or § 2255 require a certificate of appealability to proceed on appeal.  28 U.S.C. § 2253(c)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003).  Rule 11 of the Rules Governing Section 2254 Cases requires a district court to issue or deny a certificate of appealability when entering a final order that is adverse to the petitioner.

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "'that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'"  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (cleaned up).  Where denial of relief is based on procedural grounds, the petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling."  *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After careful review of the record and the applicable law, the Court concludes that reasonable jurists would not find its assessment of the claims debatable or wrong. Because the petitioner does not allege facts showing that his claims could be resolved in a different manner, a certificate of appealability will not issue in this case.

V.    **CONCLUSION**

For the reasons stated above the Court **ORDERS** that:

1.    Respondent's motion for summary judgment (Dkt. 9) is **GRANTED**.

2.    All of Sanchez's claims are **DISMISSED with prejudice.**

3.    A certificate of appealability is **DENIED**.

The Clerk will provide copies of this order to the parties.

SIGNED at Houston, Texas, this 28th day of September, 2021.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE